UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LUIS FELIPE GONZALEZ RODRIGUEZ,<br><br>Petitioner,<br><br>v.<br><br>JULIO HERNANDEZ, Seattle Field Director Enforcement and Removal Operations Immigration and Customs Enforcement, et al.,<br><br>Respondents. | CASE NO. 2:26-cv-03601-TL<br><br>ORDER ON PETITION FOR WRIT OF HABEAS CORPUS |

This matter is before the Court on Petitioner Luis Felipe Gonzales Rodriguez's Petition for Writ of Habeas Corpus ("habeas petition" or "petition"). Dkt. No. 1. Petitioner, who is presently detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, seeks his immediate release and injunctive relief regarding any future re-detention. *Id.* at 25.

//

//

Having reviewed the petition, Respondents' Return (Dkt. No. 6)[1], Petitioner's Traverse (Dkt. No. 9), and the relevant record, the Court GRANTS IN PART AND DENIES IN PART the petition as it pertains to Petitioner.[2]

## I. BACKGROUND

Petitioner is a citizen of Venezuela. Dkt. No. 1 ¶ 35. On or about July 9, 2023, Petitioner entered the United States and was detained by immigration officials. *Id.* ¶¶ 35–36.[3] According to a later Department of Homeland Security ("DHS") document, Petitioner was paroled into the United States that same day. Dkt. No. 8-1 (2026 DHS Form I-213) at 4.[4] On July 2, 2024, DHS issued a Notice to Appear ("NTA") charging Petitioner as removable from the United States and ordering him to appear in immigration court on March 17, 2025. Dkt. No. 8-2 (NTA) at 2. On August 21, 2024, an Order of Release on Recognizance ("OREC") was issued to Petitioner "[i]n accordance with section 236 of the Immigration and Nationality Act." Dkt. No. 8-3 (OREC) at 2. Petitioner's OREC included the command that Petitioner "must report for any hearing or interview as directed by Immigration and Customs Enforcement [("ICE")] or the Executive Office for Immigration Review" and scheduled his first check-in for March 19, 2025. *Id.* The OREC also cautioned Petitioner that "[f]ailure to comply with the conditions of this [OREC] may result in revocation of your release and your arrest and detention by Immigration and Customs Enforcement." *Id.*

---

[1] As used in this Order, "Respondents" does not include Respondent Bruce Scott, who has not appeared.

[2] Petitioner originally filed a consolidated Petition seeking relief for himself and two co-petitioners. *See generally* Dkt. No. 1. The action was severed into three habeas actions, each assigned to a different judge. *See generally* Dkt. No. 2 (Order Severing Habeas Petitions). This Court considers only the portions of the habeas petition that apply to Petitioner.

[3] Petitioner reports that he "presented himself to immigration officials at the U.S.–Mexico border," implying he sought admission at a port of entry. Dkt. No. 1 ¶ 36; *accord* Dkt. No. 3 (Petitioner's Declaration). However, the later-issued Notice of Appearance charging Petitioner as removable alleges that he entered the United States without being "admitted or paroled" (Dkt. No. 8-2 at 2). The Court has not been provided with any original document created in connection with Petitioner's entry to the United States.

[4] The Court has not been provided with Petitioner's 2023 Form I-213 or any original document evidencing his release on parole.

During his release into the United States, Petitioner applied for asylum, obtained work authorization, and got a job as a delivery person. Dkt. No. 1 ¶ 37. He attended his scheduled "ICE" check-ins "to the best of his ability," and, when he missed one check-in due to work, "his lawyer was able to contact ICE to reschedule the appointment." *Id.* ¶ 38.

On August 23, 2026, Petitioner was detained by ICE while either driving or approaching his car. *See id.* ¶ 40; Dkt. No. 8-1 at 4. He reports that he was surrounded by six armed agents, was placed in fear for his life, and was not shown a warrant or told why he was being arrested. Dkt. No. 1 ¶¶ 40–41. The DHS Form I-213 prepared in relation to this arrest gives the reason for Petitioner's arrest as "violating the terms of his OREC and not reporting for his December 9, 2025, check-in." Dkt. No. 8-1 at 4.

Petitioner is now detained at NWIPC. Dkt. No. 1 ¶ 12. He filed the instant habeas petition on September 14, 2026.

## II. Legal Standard

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)—that is, that they are "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c).

## III. Discussion

### A. Statutory Authority for Petitioner's Detention

Respondents argue that Petitioner is subject to mandatory detention under 8 U.S.C. 1225(b) because he is an "applicant[] for admission" to the United States who was encountered by DHS within 14 days of entry to the United States and detained pursuant to 8 U.S.C. § 1225(b)(2)(A). Dkt. No. 6 at 4. As Plaintiff points out, the authority for his detention is of

minimal relevance to the procedural due process claim he raises because "[t]his Court has already clarified that the Due Process Clause applies to Petitioners—who were deprived of their liberty when ICE revoked their release and re-detained them—regardless of whether they are subject to detention under Section 1225(b)(1), Section 1225(b)(2), or Section 1226(a)[.]" Dkt. No. 1 at 2 (quoting *Diaz v. Hernandez*, No. 26-2655, Dkt. No. 15 at 3 (W.D. Wash. Aug. 24, 2026)); *see also, e.g.*, *L.Y.C.G. v. Hernandez*, No. 26-3057, 2026 WL 3023731, at *3–7 (W.D. Wash. Oct. 8, 2026) (ordering release of habeas petitioner detained under 8 U.S.C. § 1225(b) upon finding that his re-detention violated due process). In any case, the Court finds that Respondents are mistaken, and Petitioner is detained pursuant to 8 U.S.C. § 1226(a).

The record demonstrates Respondents have treated Petitioner as subject to Section 1226(a) since at least August 21, 2024, when he was issued an OREC "[i]n accordance with section 236 of the [INA]"—that is, 8 U.S.C. § 1226. If Petitioner was truly subject to mandatory detention under Section 1225(b) at that time, as Respondents now claim, DHS could never have issued him on an OREC under Section 1226. *See Jennings v. Rodriguez*, 583 U.S. 281, 283 (2018) (beyond humanitarian parole under 8 U.S.C. § 1182(d)(5)(A), "there are no other circumstances under which [noncitizens] detained under § 1225(b) may be released"). This is a contradiction Respondents completely ignore.

This Court is unconvinced by Respondents' argument that Section 1225(b)(2)(A) now applies when this claim is rebutted by DHS's own decision making. *See, e.g.*, *Ahmad v. Mullin*, No. C26-2194, 2026 WL 2689820, at *2 (W.D. Wash. Sept. 14, 2026) ("Where petitioner is 'treated by Respondents as subject to detention under § 1226, rather than mandatory detention under § 1225,' the former is more likely to apply." (citation modified) (quoting *Del Valle Castillo v. Wamsley*, No. C25-2054, 2025 WL 3524932, at *5 (W.D. Wash. Nov. 26, 2025))); *Quintanilla v. Hernandez*, No. C26-1629, 2026 WL 1827541, at *3 (W.D. Wash. June 25, 2026)

(concluding that noncitizen was detained under 8 U.S.C. § 1226(a) due to ICE's past classification of him). Therefore, the Petitioner is detained under 8 U.S.C. 1226(a), and his detention is not mandatory.

**B. Constitutionality of Petitioner's Re-Detention**

Petitioner challenges as unconstitutional his re-detention without "basic due process—such as written notice and a pre-detention hearing before a neutral decisionmaker." Dkt. No. 1 ¶ 62. The Due Process Clause prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. The right to due process extends to "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 333 (citation modified).

In *Mathews*, the Supreme Court established a three-part balancing test for determining whether an administrative procedure provides the process constitutionally due:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335. Consistent with the arguments of the Parties (*see* Dkt. No. 1 ¶¶ 63–67; Dkt. No. 6 at 4–7), the Court will evaluate the *Mathews* factors to determine whether Petitioner's re-detention comported with constitutional due process requirements.

**a. The Private Interest Affected by the Official Action**

"Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Zadvydas*, 533 U.S. at 696 (holding that even a noncitizen with a final order of removal has a liberty interest "strong enough" to challenge "indefinite and potentially permanent" immigration detention). The Ninth Circuit has found that "a detained person's liberty interest is substantial." *Rodriguez Diaz*, 53 F.4th at 1199.

Petitioner argues he has "an undisputable liberty interest in being free from detention which was only strengthened when the government decided to release" him. Dkt. No. 1 ¶ 63 (citing *Bd. of Pardons v. Allen*, 482 U.S. 369, 377-81 (1987)). The Court agrees that Petitioner has a substantial and inherent interest in retaining his "[f]reedom from bodily restraint." *Foucha*, 504 U.S. at 80. Since Petitioner's initial release in 2023, he has lived in the United States for over three years. During this time, Petitioner has relied on Respondents' affirmative grant of liberty to apply for asylum, obtain work authorization, and work as a delivery person. These facts demonstrate that Petitioner has a heightened reliance interest on his release. *See, e.g.*, *Caisa Telenchana v. Hermosillo*, No. C26-00363, 2026 WL 696806, at *2–4, 9 (W.D. Wash. Mar. 12, 2026) (noting noncitizens released on ORECs who had applied for asylum and obtained work permits while on release had "established liberty interests in the months and years they were permitted to live in the United States").

Respondents do not contest that Petitioner maintains some level of liberty interest. *See* Dkt. No. 6 at 5 ("many courts have recognized that noncitizens released from immigration detention have a protected liberty interest in remaining out of custody"). However, Respondents argue that "Petitioner's liberty interest to remain out of custody is reduced" because it "was always subject to his compliance with terms of his release, such as meeting the reporting

requirement." *Id.* at 5–6. But even a diminished interest in one's freedom from confinement is an extraordinarily weighty interest. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1199 (9th Cir. 2022) ("A detained person's liberty interest is substantial[.]").

Therefore, the first *Mathews* factor weighs in Petitioner's favor.

**b. The Risk of Erroneous Deprivation**

Petitioner argues that his re-detention "[a]bsent notice and a pre-detention hearing in front of a neutral decisionmaker" posed an unacceptably high risk of erroneous deprivation "given the possibility that the Petitioner's re-detention will not be pursuant to a valid state interest" and was executed pursuant to ICE and DHS's unreviewed discretion, with no opportunity for Petitioner to challenge his detention. Dkt. No. 1 ¶ 64. Respondents contend that "the risk of a constitutionally significant deprivation of Petitioner's liberty without a pre-detention hearing is minimal" because "Petitioner's re-detention was based on objective facts," specifically Petitioner's "fail[ure] to report to [Enforcement and Removal Operations] for his scheduled check-in on December 9, 2025" in violation of his OREC. Dkt. No. 6 at 6.

Respondents' arguments are unconvincing. First, if it is an "objective fact" that Petitioner failed to report for a check-in on December 9, 2025, it is not one in the record before the Court. Respondents have chosen to provide no competent evidence that Petitioner missed a check-in on that date, nor that any check-in beyond his initial check-in on March 19, 2025, was ever even scheduled. Respondents offer only the Declaration of Deportation Officer Kurtis Reed, who bases his assertion that Petitioner missed the check-in on "knowledge[] obtained from various records and systems maintained by ICE in the regular course of business, including but not limited to the alien registration file, DHS databases, and notes from the previous and current officers in charge of the case relating to Petitioner." Dkt. No. 7 ¶ 3. In other words, the declarant has no personal knowledge of any OREC violation, and the Court has not been provided with the

records he claims to have reviewed. As this Court has previously admonished under similar circumstances, "[i]f Respondents wished Petitioner's alleged [OREC] violation[] to be considered, they could and should have provided" the Court with competent evidence of that violation. *Sarwari v. Wamsley*, No. 26-121, 2026 WL 279968, at *5 (W.D. Wash. Feb. 3, 2026).

Equally without merit is Respondents' argument that the alleged missed check-in means "there can be no reasonable argument that Petitioner's violation constitutes 'pretextual' reasons for his re-detention." Dkt. No. 6 at 6. First, without evidence that a violation actually occurred, "there is no basis for the Court to find that 'the allegations are not obviously pretextual . . . .'" *Sarwari*, 2026 WL 279968, at *5 (citation modified) (quoting *Martinez Hernandez v. Andrews*, No. C25-1035, 2025 WL 2495767, at *12 (E.D. Cal. Aug. 28, 2025)). But even if Petitioner did miss a check-in in December 2025—and even if this is not the check-in his attorney rescheduled on his behalf (*see* Dkt. No. 1 ¶ 38)—Respondents were immediately aware of such a violation at the time it occurred and chose not to revoke Petitioner's liberty because of it. The record does not suggest Respondents took any action to revoke Petitioner's liberty in or around December 2025, and Petitioner was permitted to continue living in the United States in reliance on his grant of conditional release. Indeed, DHS's own provided exhibits make clear that the alleged missed appointment did not initiate the chain of events that led to Petitioner's re-detention. Rather, the 2026 Form I-213 reports that ICE officers *first* identified Petitioner in their database as a noncitizen in removal proceedings and *then* undertook "further investigation" of his immigration records (which, again, have not been provided to the Court) until they came across some indication that he had "failed to report for OREC check in." Dkt. No. 8-1 at 3. An arrest triggered by a fishing expedition that dredged up a months-old violation is almost the very definition of pretextual, and it is exactly the kind of procedure that lacks appropriate safeguards and is likely to result in an erroneous deprivation of liberty.

Therefore, the second *Matthews* factor weighs heavily in Petitioner's favor.

**c. Respondent's Interest in Re-Detaining Petitioner Without Hearing**

The third *Matthews* factor addresses the Government's interest in re-detaining Petitioner without a hearing. Here, Respondents argue only that "the government clearly has a strong interest in preventing aliens from remaining in the United States in violation of our law." Dkt. No. 6 at 6 (citation modified) (quoting *Rodriguez Diaz*, 53 F.4th at 1208. This may be true, but such an interest is present in all immigration removal cases and does not mean the Government may dispense with proper re-detention procedures. The Government offers no arguments specific to Petitioner and no reason why this interest cannot be furthered while also providing individuals on conditional release with notice and an opportunity to be heard before their release is terminated.

Therefore, the third *Matthews* factor weighs in Petitioner's favor.

* * *

All three *Mathews* factors weigh in Petitioner's favor, and Petitioner's re-detention without proper notice and an opportunity to be heard violated his rights under the Fifth Amendment to the Constitution of the United States. The proper remedy for such a violation is immediate release. *See, e.g.*, *Arevalo-Hortua*, *v. Hernandez*, No. C26-2994, 2026 WL 2797986, at *7 (W.D. Wash. Sept. 18, 2026) (ordering release where re-detention without notice or opportunity to be heard violated due process); *Hernandez v. Scott*, No. 26-759, 2026 WL 933361, at *3–4 (W.D. Wash. Apr. 7, 2026) (same); *Amatbek Uulu v. Scott*, 2026 WL 865813, at *6 (W.D. Wash. Mar. 30, 2026) (same). Therefore, the Court will grant the habeas petition and order Petitioner's release.

//

//

**C. Petitioner's Request for Injunctive Relief**

Petitioner also seeks injunctive relief, requesting "that the Respondents be permanently enjoined from re-detaining [him] absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that [he is] a flight risk or danger to the community and that no alternative to detention would mitigate those risks." Dkt. No. 1 ¶ 68.

A petitioner "seeking a permanent injunction . . . must demonstrate: (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Factors three and four of the *eBay* analysis merge when the Government is the party opposing injunctive relief. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The Ninth Circuit has treated the first and second factors of the *eBay* test as satisfied where the party requesting injunctive relief can demonstrate that "it is likely to suffer irreparable injury that cannot be redressed by an award of damages," whether or not such injury has already occurred. *See City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1243 (9th Cir. 2018).

Although Petitioner does not explicitly discuss the individual *eBay* factors, he clearly satisfies them all, arguing convincingly that Respondents' history of behavior create a "cognizable danger" that requires injunctive relief. Dkt. No. 1 ¶ 76. With respect to the first factor, "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Courts in this District have repeatedly found that Respondents' re-detention of a noncitizen who was released on an OREC without notice and an opportunity to be heard respond violates the Constitution. *See, e.g.*, *Kesete v. Mullin*,

No. C26-3719, 2026 WL 3269260, at *2 (W.D. Wash. Oct. 30, 2026), *Hernandez Rangel v. Scott*, No. C26-3028, 2026 WL 3135562, at *6 (W.D. Wash. Oct. 20, 2026); *Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1203 (W.D. Wash. 2025). Because Petitioner was already re-detained once without proper notice or opportunity to respond, he has already suffered irreparable injury. Petitioner points out a pattern and practice of unconstitutional re-detentions by Respondents (*see* Dkt. No. 1 ¶ 76), and the Court is convinced that a violation is likely to recur absent injunctive relief. The first *eBay* factor is therefore satisfied.

The remaining factors are satisfied as well. As to the second, any monetary damages would be inadequate to compensate for being detained for months in violation of due process. As to the third and fourth, "it is 'always in the public interest to prevent the violation of a party's constitutional rights.'" *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (quoting *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022)). What is more, in the immigration context, the Ninth Circuit has recognized that "[t]he costs to the public of immigration detention are 'staggering[.]'" *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017). Accordingly, the balance of hardships and the public interest weigh in Petitioner's favor.

Therefore, Petitioner has satisfied all the *eBay* factors and demonstrated that he is entitled to injunctive relief preventing Respondents from re-detaining him "in a same or similar manner" to his August 2026 arrest with no advance notice or opportunity to be heard. Dkt. No. 1 ¶ 70. He has not, however, provided authority or argument demonstrating that the specific process due before his re-detention includes "a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that he is a flight risk or danger to the community and that no alternative to detention would mitigate those risks[.]" Dkt. No. 1 at 25 ¶ 2. That portion of Petitioner's request is therefore denied.

Accordingly, Petitioner's request for injunctive relief is granted in part and denied in part. The Court orders that prior to any re-detention of Petitioner, Respondents must comport with and all applicable statutes and regulations and must comply with due process by providing Petitioner with notice of re-detention and an opportunity to respond.

## IV. CONCLUSION

According, the Petition for Writ of Habeas Corpus (Dkt. No. 1) is GRANTED IN PART AND DENIED IN PART as to Petitioner. It is further ORDERED:

(1) Respondent and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them:

(a) SHALL release Petitioner from detention within **twenty-four (24) hours** of this Order under appropriate conditions of release; and

(b) SHALL submit to the Court, within **forty-eight (48) hours** of Petitioner's release from detention, a declaration or status report confirming that Petitioner has been released from custody and informing the Court of the date and time of his release.

(2) Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them SHALL NOT re-detain Petitioner without complying with all applicable statutes and regulations and without first providing him with notice and an opportunity to respond in accordance and the Due Process Clause of the Fifth Amendment to the United States Constitution.

Dated this 3rd day of November, 2026.

Tana Lin
United States District Judge